IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NELSON RAFAEL ZAPATA-VICENTE,<br><br>Defendant. | Criminal Action Number 3:01CR061 |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on remand from the United States Court of Appeals for the Fourth Circuit. On October 14, 2005, the Fourth Circuit issued a per curiam Opinion vacating this Court's March 25, 2005 Order interpreting Zapata-Vicente's February 14, 2005 letter to the Court as a successive petition under 28 U.S.C. § 2255 and dismissing it for lack of jurisdiction. The Fourth Circuit stated that Zapata-Vicente's letter was more appropriately construed as an attempt to argue that he filed his § 2255 motion within the time originally allotted to him by this Court, and not an attempt to file new claims. Accordingly, the Fourth Circuit remanded the matter and directed the Court to consider Zapata-Vicente's letter pursuant to Federal Rule of Civil Procedure 60(b). For the reasons stated, Zapata-Vicente's letter request, construed as a Motion submitted pursuant to Rule 60(b), is DENIED.

### I.  BACKGROUND

On December 19, 2001, a jury found Zapata-Vicente guilty of conspiracy to distribute cocaine base and cocaine hydrochloride, as well as distribution of cocaine hydrochloride. On March 21, 2002, Zapata-Vicente was sentenced to three hundred and sixty (360) months of imprisonment

and five (5) years of supervised release.  The Fourth Circuit affirmed Zapata-Vicente's conviction on September 3, 2002.  Zapata-Vicente then petitioned the Supreme Court of the United States for a writ of certiorari, which was denied on January 27, 2003.

Zapata-Vicente filed a Motion for Extension of Time to Prepare and File 28 U.S.C. § 2255 Motion on December 19, 2003.  This Court granted this first extension request and set a filing deadline of February 27, 2004.  Seeking to comply with the Court's deadline, Zapata-Vicente submitted a § 2255 Motion to the Court on January 29, 2004.  The Motion failed to identify any claims, however, and lacked a memorandum of law.  Zapata-Vicente also filed a request for in forma pauperis ("IFP") status and a Motion to Provide Transcripts, Pleadings and Other Documents.  Along with those requests, Zapata-Vicente asked for a second extension, styled as a "Motion for Extension of Time to Amend 28 U.S.C. § 2255 Motion Upon Review of Transcripts and Other Documents." In his Motion for Extension of Time, Zapata-Vicente asserted that he needed additional time to examine his transcripts and court documents before he could "amend" his § 2255 Motion to state the facts and issues he wished to present.

After reviewing the Motions, the Court granted Zapata-Vicente a second extension and ordered him to file his "amendment" by the close of business on April 5, 2004.  In the interim, Zapata-Vicente's habeas-related pleadings were placed on the left side of his file.  The Court also ordered him to complete the appropriate form for IFP status.  On March 5, 2004, the Court granted Zapata-Vicente's Motion to Proceed IFP.

On May 4, 2004, Zapata-Vicente filed a Motion asking for yet another extension to "amend" his § 2255 Motion, stating that he had just recently received a copy of his transcripts and needed time to review them. On May 12, 2004, the Court granted this third extension request but advised Zapata-

Vicente that, unless he provided a compelling reason in support thereof, the Court would grant no further extensions. Zapata-Vicente was ordered to file his amended § 2255 Motion by the close of business on Friday, June 18, 2004.

On July 26, 2004, more than five weeks past the third extended deadline and approximately one and a half years after his judgment became final, Zapata-Vicente filed a Motion to Amend and/or Supplement his 28 U.S.C. § 2255 Motion, stating that, in light of the Supreme Court's ruling in Blakely v. Washington, he had additional issues that he wished to present. In an Order dated August 13, 2004, the Court noted that it had been "extraordinarily patient" with Zapata-Vicente and refused to award him a fourth extension. The Court ordered the Clerk to file Zapata-Vicente's § 2255 Motion and then dismissed the Motion, because it failed to specify any claims for relief and lacked a supporting memorandum of law.

On September 8, 2004, the Court received from Zapata-Vicente an envelope containing an unsigned copy of his "completed" § 2255 Motion (including his Memorandum of Law) and a request for a Certificate of Appealability of the Court's August 13, 2004 Order. In the same package, Zapata-Vicente also submitted an affidavit signed by his wife,[1] Lillian Villanueva, on August 26, 2004, in which she stated that she previously sent Zapata-Vicente's § 2255 Memorandum of Law to the Court on July 13, 2004 and suggested that it must have gotten lost in the mail. On September 16, 2004, the Court received a signed copy of the § 2255 Motion and Memorandum of Law that was submitted by Ms. Villaneuva.

---

[1] Ms. Villanueva's relationship with Zapata-Vicente is not entirely certain, as she refers to herself as a "friend" of Zapata-Vicente in her affidavit.

On February 14, 2005, the Court received the letter at issue, in which Zapata-Vicente claims to have submitted his § 2255 Motion and Memorandum of Law within the time allocated by the Court. He insists that Ms. Villanueva personally forwarded a copy to the Court before the June 18, 2004 deadline. He explains that he instructed Ms. Villanueva to submit an affidavit to that effect. The Court did receive an affidavit from Ms. Villanueva on September 8, 2004, but in that affidavit, Ms. Villanueva represents that she submitted the completed § 2255 Motion and Memorandum of Law on July 13, 2004. On April 11, 2005, the Court received a second affidavit signed by Ms. Villaneuva. In the second affidavit, Ms. Villanueva stated that she mailed Zapata-Vicente's completed § 2255 Motion and Memorandum of Law "back in June 2004," but that she sent it using "regular mail." She further explained that Zapata-Vicente was upset when he learned that the original envelope had not been sent as certified mail. As a result, Ms. Villanueva stated, she re-sent the materials via certified mail in September 2004, and they were signed for by a Court representative on September 16, 2004.

On March 25, 2005, the Court issued an Order interpreting Zapata-Vicente's February 14, 2005 letter as a successive petition under 28 U.S.C. § 2255 and dismissing it for lack of jurisdiction. The Court noted that even if Ms. Villanueva had sent the completed § 2255 Motion and Memorandum of Law on July 13, 2004, as stated in her first affidavit, dated August 26, 2004, that still would have been nearly one month after the Court's June 18, 2004 deadline. Zapata-Vicente appealed the Court's Order dismissing his letter as a successive § 2255 Motion. On October 14, 2005, the Fourth Circuit issued a per curiam Opinion vacating this Court's March 25, 2005 Order, remanding the matter, and directing this Court to analyze Zapata-Vicente's letter pursuant to Federal Rule of Civil Procedure 60(b).

## II.  DISCUSSION

In order to seek relief under Rule 60(b) under the present circumstances, Zapata-Vicente, as the moving party, would have to show that a 60(b) motion is timely, that his dismissed § 2255 Motion was meritorious, and that the opposing party would not be unfairly prejudiced by having the Order in question set aside.  See Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir. 1987). If these threshold requirements were met, Zapata-Vicente would then have to satisfy at least one of the six grounds for relief specified in Rule 60(b): (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason justifying relief from the operation of the judgment.  Fed. R. Civ. P. 60(b).  As the Fourth Circuit has noted, any doubt as to whether relief under Rule 60(b) is appropriate should be resolved in favor of the moving party.  See Compton v. Alton S.S. Co., 608 F.2d 96, 103 (4th Cir. 1979); Strader v. Hall, 529 F.2d 517 (4th Cir. 1975) (per curiam); Huennekens v. Reczek, 43 Fed. Appx. 562, 567 ("Significantly, any doubt as to whether a court should grant relief under Rule 60(b) is resolved in favor of the moving party.") (4th Cir. 2002).  That said, however, relief under Rule 60(b) should be granted only "upon a showing of exceptional circumstances."  Compton, 608 F.2d at 102.

Looking at the threshold requirements for Rule 60(b) relief, first, it is at least arguable that the February 14, 2005 letter would be timely as a Rule 60(b) motion.  It was submitted approximately six months after the Court's August 14, 2004 Order dismissing Zapata-Vicente's § 2255 Motion.  This could be considered a reasonable amount of time and is well within the one-year bar that applies to relief requested based on subsections (1) through (3).  Whether the claims raised

in Zapata-Vicente's § 2255 Motion are meritorious is less certain. The Memorandum of Law received on September 16, 2004 raises several claims questioning the validity of Zapata-Vicente's convictions, including allegations that (1) a Government witness used against Zapata-Vicente lied in significant and provable respects; (2) admission of Zapata-Vicente's statement regarding his possession of a gun and the drawing of an inference based on his refusal to cooperate violated his rights under the Supreme Court case, <u>Crawford v. Washington</u>, 541 U.S. 36 (2004); (3) Zapata-Vicente was provided with ineffective assistance of counsel; and (4) the Government's presentation of evidence of a drug seizure in the Middle District of Georgia (from a case that was later dismissed against Zapata-Vicente) violated the Double Jeopardy Clause of the Fifth Amendment. For purposes of this Opinion, the Court will, without much consequence, accept that the "meritorious § 2255 Motion" and "no unfair prejudice to the Government" requirements could also be met.

The more critical inquiry involves a determination of which subsection of Rule 60(b) could conceivably be applied. In Zapata-Vicente's February 14, 2005 letter, he suggests that the Court wrongfully dismissed his § 2255 Motion for failing to state any claims for relief and for lacking a memorandum of law. As support, Zapata-Vicente insists that after he submitted his skeletal § 2255 Motion in January 2004, his wife submitted the corresponding Memorandum of Law at some point before the Court's third extended deadline of June 18, 2004. Therefore, Zapata-Vicente essentially argues that the Court erroneously concluded in its August 13, 2004 Order dismissing his § 2255 Motion that he failed to file a supporting memorandum of law by June 18, 2004. Upon consideration of the nature of Zapata-Vicente's request for relief in his February 14, 2005 letter, it appears that the only subsections that could plausibly apply are (1), for "mistake, inadvertence, surprise, or excusable

neglect," or (6), for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(1), (6).

To obtain relief under Rule 60(b)(1) for mistake, surprise, inadvertence, or excusable neglect, the moving party "must demonstrate <u>inter alia</u> that he was not at fault." <u>Home Port Rentals Inc. v. Ruben</u>, 957 F.2d 126, 132 (4th Cir. 1992). Notably, when the adverse order or judgment in question is a result of a party's failure to submit a brief or other required pleading by a court-imposed deadline, a court may consider the party's prior difficulties with meeting deadlines in determining whether there has been a mistake, surprise, inadvertence, or excusable neglect. <u>See</u> <u>Skinner v. First Union Nat'l Bank</u>, 1999 U.S. App. LEXIS 8477, at *6 (4th Cir. May 3, 1999) (per curiam). In the absence of an acceptable excuse for the failure to make a timely submission, a court must consider all relevant circumstances and use its discretion to determine whether subsection (1) of Rule 60(b) should apply. <u>See</u> <u>Park Corp. v. Lexington Ins. Co.</u>, 812 F.2d 894, 897 (4th Cir. 1987).

Some courts have expressly held that lost mail resulting in the missing of a deadline is within the contemplation of "excusable neglect" as listed in Rule 60(b)(1). <u>See, e.g.</u>, <u>Prizevoits v. Indiana Bell Tel. Co.</u>, 76 F.3d 132, 134 (7th Cir. 1996) ("The term 'excusable neglect' . . . refers to the missing of a deadline as a result of such things as misrepresentations by judicial officers, *lost mail*, and plausible misinterpretations of ambiguous rules.") (emphasis added). Courts have further defined "excusable neglect" to mean that "[a] court will grant relief . . . [to the party missing a deadline] only where the actions leading to the [missing of the deadline] were not willful, careless, or negligent." <u>Johnson v. Gudmundsson</u>, 35 F.3d 1104, 1117 (7th Cir. 1994). The Fourth Circuit has held that the regularity of the mail service is "such that proof of mailing is prima facie proof of receipt by the addressee." <u>Elmore v. United States</u>, 465 F.2d 1232, 1234 (4th Cir. 1972). Other

courts have emphasized that a letter is presumed to have been received only if the Rule 60(b)(1) movant first proves that the envelope was actually mailed.  See In re Cendant Corp. Litig., 157 F. Supp. 2d 376, 390 (D.N.J. 2001).  At least one court has opined that the United States Postal Service "cannot be burdened with full blame" for losing a mailed envelope when "minimal safeguards could and should have been established which would have prevented th[e] loss."  Rogers v. ITT Hartford Life & Accident Co., 178 F.R.D. 476, 480 (S.D. Miss. 1997).

      In the instant case, the only proof that Zapata-Vicente's Memorandum of Law might have been sent before the June 18, 2004 deadline lies in Ms. Villanueva's statement made in her second affidavit: "I mail [sic] a package from Mr. Nelson Zapata back in June 2004, but I mail [sic] it regular mail."  Apr. 6, 2005 Villanueva Aff. (located on left side of file).  Significantly, Ms. Villanueva's first affidavit offers a contradiction, stating that she did not send the Memorandum of Law until July 2004: "I mail [sic] in his 2255 back in [sic] July 13, 2004 . . . but I did not mail it certified therefore [sic] his being told that it was never received."  Aug. 26, 2004 Villanueva Aff. (stapled to Docket Entry # 71).  Nothing before the Court indicates that the envelope was ever returned to the post office or to Ms. Villanueva.  Assuming that Ms. Villanueva did actually send Zapata-Vicente's completed § 2255 materials prior to the June 18, 2004 deadline, she, by her own concession, neglected to use even minimal safeguards to ensure that the envelope would be delivered, or at least tracked or otherwise accounted for by the Postal Service.

      To Zapata-Vicente's credit, the Memorandum of Law that was finally submitted to the Court in September 2004 does have the typewritten phrase, "Dated: May 27, 2004," near the signature line on the last page of the Memorandum.  Given that fact, if the Court had before it only Ms. Villanueva's second affidavit stating that she mailed the Memorandum of Law "back in June 2004,"

then perhaps there would be sufficient doubt to warrant a finding in Zapata-Vicente's favor and a presumption that the Memorandum was, in fact, mailed before the deadline and should have been received. Unfortunately for Zapata-Vicente, Ms. Villanueva submitted affidavits that materially contradicted each other. What is worse, Ms. Villanueva's representations changed from first providing a specific date—July 13, 2004—on August 26, 2004, to later providing a broad range of dates—"back in June 2004"—on April 6, 2005. These contradictions, coupled with Zapata-Vicente's proven failure to meet court-imposed deadlines on several occasions, weigh toward a denial of Rule 60(b)(1) relief.

Finally, with respect to Rule 60(b)(6), it is difficult to readily identify "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). A motion pursuant to Rule 60(b)(6) cannot be granted "absent 'extraordinary circumstances'" or situations involving undue hardship. See Reid v. Angelone, 369 F.3d 363, 370 (4th Cir. 2004) (citation omitted). The Court cannot find any extraordinary aspect of this case other than Zapata-Vicente's remarkable inability to comply with the Court's June 18, 2004 deadline after the Court had already granted three of his requests to extend the date for submitting a complete § 2255 Motion. One might argue that Zapata-Vicente would suffer undue hardship if he were not allowed to file at least one motion pursuant to 28 U.S.C. § 2255. Significantly, though, this was not a right that the Court unjustifiably foreclosed. The one-year statute of limitations for filing § 2255 motions exists for a purpose and is strictly enforced in an effort to promote the finality of judgments. See Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003). Although the statute allows for only twelve (12) months after a judgment has become final, see 28 U.S.C. § 2255 (2000), the Court was flexible enough to grant Zapata-Vicente an additional six (6) months—a total of (18) months—to complete and supplement his skeletal §

2255 Motion. Under these circumstances, the evidence in the record does not justify relief under Rule 60(b)(6).

### III. CONCLUSION

For the reasons stated, Zapata-Vicente's letter request, construed as a Motion submitted pursuant to Federal Rule of Civil Procedure 60(b), is hereby DENIED.

An appropriate Order shall issue.

      /s/   James R. Spencer
CHIEF UNITED STATES DISTRICT JUDGE

ENTERED this  17th  day of August 2006